UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLES FAULK,<br><br>*Plaintiff,*<br><br>v.<br><br>OWENS CORNING ROOFING AND ASPHALT, LLC,<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 3:23-CV-0230-X |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Charles Faulk's Motion to Enforce Deposition Notice of Defendant Owens Corning Roofing and Asphalt LLC's ("Owens Corning") Corporate Representatives. (Doc. 22). After reviewing the motion, response, reply, and applicable law, the Court **GRANTS IN PART and DENIES IN PART** Faulk's motion. (Doc. 22). Additionally, the parties are **INSTRUCTED** to file a joint status report within 48 hours agreeing upon a date to depose Owens Corning's corporate representative.

### I. Background

This is an unlawful termination case. Charles Faulk is an African American male.[1] On June 21, 2016, Owens Corning originally hired Faulk as a Utility Operator, but Faulk acquired additional roles within the company, including forklift driver,

---

[1] Doc. 1 at 2.

1

end-of-the-line driver, and Raw Material Coordinator.[2] Two separate events in 2022 give rise to the current dispute.

First, in February 2022, Faulk claims his supervisor, Mike Brown, prevented him from collecting his overtime wages by both preventing Faulk from working overtime hours[3] and by fraudulently going "into the [company] portal" to "cutoff [Faulk's] overtime collection."[4] Second, in June 2022, Faulk was suspended and drug tested after being involved in a forklift accident with another forklift driver.[5] Faulk claims that two non-African American employees, Joseph Martinez and Zach Prophet, were not drug tested after being involved in forklift incidents.[6] After his suspension, in July 2022, Faulk contacted the Equal Employment Opportunity Commission and then filed a formal charge.[7]

Faulk now brings suit in this Court under Title VII alleging that he was discriminated upon on the basis of race[8] and in retaliation.[9] Presently, Faulk filed a motion to enforce a deposition of an Owens Corning corporate representative, and that motion is ripe for review.

---

[2] *Id.*

[3] *Id.* at ¶¶ 9–10.

[4] *Id.* at ¶ 12.

[5] *Id.* at 4.

[6] *Id.* at 4.

[7] *Id.* at 5

[8] *Id.* at 5–6

[9] *Id.* at 6–8.

## II. Analysis

The parties' briefs discuss related but separate issues concerning discovery. In its motion, Faulk asks this Court for three things regarding Owens Corning's corporate representative: (1) that Owens Corning produces a corporate representative,[10] (2) that Owens Corning pays Faulk for costs related to his motion,[11] and (3) that Owens Corning's corporate representative is produced prior to Faulk's deposition.[12] In response, Owens Corning (1) wishes to correct the record,[13] (2) advises the Court of some behind-the-scenes, agreed-to limitations on deposition topics,[14] and (3) seeks a protective order limiting otherwise overbroad, irrelevant, invasive, or burdensome deposition topics.[15]

The Court's memorandum opinion and order will begin by (1) limiting the discussion topics and (2) ordering the parties to meet and confer on dates regarding the availability of Owens Corning's corporate representative.[16]

### A. Deposition Topics

The Court will begin by addressing the deposition topics.

---

[10] Doc. 22 at 8.

[11] *Id.* at 10.

[12] *Id.*; *see also* Doc. 22 at 5 (describing three requests for relief).

[13] Doc. 23 at 7.

[14] *Id.* at 3.

[15] *Id.* at 11.

[16] The Court rejects Faulk's requests for fees related to filing his motion.

> Topic 1: Owens's corporate structure, including type of corporation, size, and relationships to other entities, including parent and subsidiary corporations.

Normally, this deposition topic wouldn't be relevant because "the most natural focus" on a "individual complaint" in Title VII cases is the "employing unit or work unit."[17] But Owens Corning has made its corporate structure a point of contention. Specifically, Owens Corning objects elsewhere that Faulk's "objections to the deposition notice [are] being directed to the wrong (non)party, 'Owens Cornings.'"[18] Owens Corning cannot hide behind its corporate structure by claiming Faulk is suing the wrong entity while denying Faulk the opportunity to examine a corporate representative about the company's the corporate structure.

The Court finds Topic 1 relevant, proportional, and not unduly burdensome.

> Topic 2: The structure of OWENS's human resources department, including number of employees, names, educational background, and reporting relationships for the time period of Plaintiff's employment, two years before Plaintiff was hired, and for two years after Plaintiff's and Defendant's employment relationship ended.

The Court finds some of this topic overbroad. First, the educational background, i.e., where an employee went to school, of each human resources employee is not relevant to this Title VII dispute. So the Court strikes that portion of the topic. Second, as to the time period, Owens Corning requests that the period be limited to the last two months of Faulk's employment.[19] Faulk agrees to narrow

---

[17] *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978).

[18] Doc. 23 at 12.

[19] *Id.* at 14.

the temporal scope but fails to give an exact period.[20] So the Court will narrow the temporal scope to one year before Faulk was hired and one year after Faulk was fired.

> Topic 3: The creation, adoption, amendment and implementation of OWENS's personnel manual/equal employment opportunity policy/anti-discrimination policy, including the individuals involved, the dates the policy was created, adopted, amended or implemented, and the process for amending or revising the policy.

Owens Corning's anti-discrimination policy—or rather, the company's adherence to or deviation from the policy—is directly relevant to an anti-discrimination case. But Owens Corning need not produce a corporate representative who possesses a historically accurate, encyclopedia-like knowledge of Owens Corning's anti-discrimination policy. Instead, the corporate representative need be familiar with the policy, how it works, and any major amendments that occurred during Faulk's time with the company.

> Topic 4: Policies, procedures, and practices for enforcing OWENS's anti-discrimination/anti-retaliation policies, including the process for reporting, investigating, and resolving complaints of discrimination and/or retaliation.

The parties have agreed to narrow this request as described in Doc. 23 at 15 and Doc. 27 at 5.[21] So there's nothing for this Court to resolve.

> Topic 5: Policies, procedures, and practices for conducting performance reviews or compensation reviews during the period for the time period of Plaintiff's employment, two years before Plaintiff was hired, and for two years after Plaintiff's and Defendant's employment relationship ended, changes to such policies, procedures, and practices, and the decision makers involved in performance review or compensation

---

[20] Doc. 27 at 4.

[21] For clarity, the Court recognizes Owens Corning's description of the tailoring as the controlling version. *See* Doc. 23 at 15.

reviews, including those who provided input and those who had final authority.

The parties agreed to a partial limitation to this topic.[22] At this point, the parties disagree as to the location of this topic. The Court limits the location of this topic to the location where Faulk worked.

> Topic 8: The compensation system, including any pay scales, pay grades, or pay steps, if any, in effect since Plaintiff was hired and the procedure or method used to determine an employee's starting salary or wage, bonus, or incentive compensation, merit increases, and other monetary compensation.
>
> Topic 9: The benefits provided to employees including any health and welfare programs, retirement benefits, insurance plans, pension or profit-sharing plans, stock bonus plans, deferred compensation programs, leave programs, and any other fringe benefits provided to employees.

The Court takes these topics together. For both of these topics, the Court limits these requests to the time period listed in topic 2. Additionally, the Court limits this topic to the place where Faulk worked. As to topic 8, Faulk has agreed to limit this topic to the specific position Faulk held and the positions for which he applied.[23] As a practical matter, Faulk will need to work with Owens Corning to identify which positions Faulk applied to. The Court will not make Owens Corning search its records to find where Faulk applied beyond the positions that Faulk identifies to Owens Corning.

---

[22] *See* Doc. 23 at 16 ("Based on discussions between the parties, Defendant was advised Topic 5 is *intended* by Plaintiff to cover how the performance review process is meant to happen generally, and can be limited to the last three years of Plaintiff's employment (July 2019 – July 2022)."); *see also* Doc. 27 at 6 (describing this topic to cover "evaluations" and "evaluations of performance").

[23] Doc. 23 at 17.

As to topic 9, Faulk will need to work with Owens Corning to identify which promotions are at issue in this case.

> Topic 10: Policies, procedures, and practice regarding the orientation and training of new employees, the materials provided new employees during orientation or training, and the staff involved in orientation or training.
>
> Topic 11: Training that OWENS has provided its officers, directors, managers, supervisors, and employees regarding how to handle, report, process, or otherwise address claims of discrimination and/or retaliation, the materials provided to attendees during any training, the fluency and timing of such training, and the staff involved in providing such training.

Faulk states to the Court that he is willing to amend these, but he has failed to provide Owens Corning or this Court with a specific amendment.[24] Therefore, these topics are limited to positions within Faulk's department (topic 10) and managers at Faulk's location (topic 11). As to time period, the topic is limited to the time period described in topic 2. To the extent there are any outstanding issues, the Court finds that Owens Corning need only produce a deponent who has a generalized knowledge of Owens Corning's policies, procedures, and training.

> Topic 12: Formal or informal complaints of discrimination on the basis of race made by OWENS's employees since Plaintiff's employment, including formal and informal internal complaints, complaints filed with the Equal Employment Opportunity commission (EEOC) or any other like agency, and lawsuits.
>
> Topic 13: Formal or informal complaints of discrimination on the basis of retaliation made by OWENS's employees since Plaintiff's employment, including formal and informal internal complaints, complaints filed with the Equal Employment Opportunity commission (EEOC) or any other like agency, and lawsuits.

---

[24] *See* Doc. 27 at 6–7.

The Court will take topics 12 and 13 together. As to the EEOC complaints, Owens Corning is not under an obligation to disclose its employees' EEOC complaints. EEOC complaints are confidential.[25] As to the rest of the topics, the Court finds these topics overly broad, unduly burdensome, and disproportional to the needs of this case. These topics are not limited by location. These topics are not limited as to the type of discrimination alleged in this case. And the topics are vague as to what constitutes an "informal" complaint. As a result, the Court strikes those topics.

> Topic 14: Topic 14: OWENS's record-keeping and document retention policies, procedures, and practices.

This topic is not relevant to Faulk's Title VII claim. Faulk seeks this to ensure "there is no issue of electronic discovery and search terms."[26] But Owens Corning is under no obligation to assist Faulk in defining search terms or otherwise assisting in the means by which electronic evidence is searched.[27] Owens Corning could put this at issue with discovery abuses, but that issue has not arisen at this point.

> Topic 15: The facts and circumstances that form, in whole or in part, the basis for your allegation in your Answer filed in this litigation.

> Topic 16: The facts upon which Defendant bases its affirmative defenses as described in its Answer Defendant filed to Plaintiff's complaint.

As written, these topics are vague. For example, the term "allegation" as used in topic 15 is unclear, as Owens Corning's answer does not contain a counter claim.

---

[25] *See* 42 U.S.C. § 2000e–8(e).

[26] Doc. 27 at 8.

[27] *See Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 364 (N.D. Tex. 2013) (Toliver, M.J.).

The Court therefore interprets these topics as requiring a corporate representative to testify generally about the facts underlying Faulk's termination.

> Topic 17: The facts and circumstances concerning OWENS' collection and production of documents in this litigation, including the manner of searching ESI.

Faulk has dropped his defense of this topic. Owens Corning objected to this topic,[28] and Faulk failed to respond.[29] In any event, this topic, a look into the facts and circumstances regarding searchable ESI, is irrelevant to this case—a Title VII wrongful termination suit.

### B. Deposition Timing

As to scheduling a corporate representative deposition, the parties seemingly cannot get a Rule 30(b)(6) deposition scheduled.[30] The Court is here to help. The parties are hereby **INSTRUCTED** to file a joint status report within 48 hours informing the Court that the parties have agreed to a Rule 30(b)(6) deposition date. If the parties are unable to agree to a date, the joint status report must include a list of four dates with each side's objection to that date listed. If an agreement cannot be made, the Court will then examine the possible dates, consider each party's objection to those dates, choose a date, and then weight the appropriateness of sanctioning an objecting party based upon the frivolousness of its objection.

---

[28] Doc. 23 at 23.

[29] Doc. 27 at 8–9.

[30] *Compare* Doc 22 at 1–4 *with* Doc. 23 at 1–7. The underlying cause for this dispute is the ordering of depositions. There is no federal rule that directly governs the timing of depositions. The Court hopes the parties can get this issue resolved before more of this Court's intervention is necessary. *See Dondi Props. Corp. v. Com. Savs. & Loan Ass'n*, 121 F.R.D.284 (N.D. Tex. 1988) (en banc) (per curiam).

## III. Conclusion

For foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Faulk's motion. (Doc. 22). Additionally, the parties are **INSTRUCTED** to file a joint status report within 48 hours agreeing upon a date for a corporate representative deposition.

**IT IS SO ORDERED** this 7th day of February, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE