UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES FAULK, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-cv-0230-X |
| | § | |
| OWENS CORNING ROOFING AND | § | |
| ASPHALT, LLC, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Owens Corning Roofing and Asphalt, LLC's (Owens Corning) motion for summary judgment (Doc. 61), and Plaintiff Charles Faulk's motion to file exhibits under seal (Doc. 74). After carefully reviewing Owens Corning's motion, the parties' briefing, the evidence, and the arguments of counsel, the Court **GRANTS** the motion because Faulk has failed to establish a prima facie case for either his claim of discrimination or retaliation. The Court **DENIES WITHOUT PREJUDICE** Faulk's motion to file under seal but will allow him to file an amended motion to seal within fourteen (14) days of this Order.

## I.    Background

This is an employment discrimination case. Charles Faulk, an African American male, worked for Owens Corning for six years.[1] Faulk began at Owens Corning as a Utility Operator before he was promoted to a Raw Material Coordinator,

---

[1] Doc. 1 at 2.

and then trained for End of Line Driver; both latter positions involved operating a forklift. Throughout his employment, Faulk could collect overtime in these roles. At some time in early 2022, Faulk's ability to collect overtime as a Utility Operator (but not his other two roles) was removed in the company's overtime portal for a period of a few weeks. Faulk alleges that Mike Brown, his supervisor, intentionally turned off his overtime because of "Plaintiff's race and [because] Mr. Brown felt Plaintiff was making too much money."[2]  Faulk also alleges that Brown did not treat black employees fairly and that he heard about a Facebook post on Brown's profile from 2019 that included a photo with a Confederate flag in the background.

In June 2022, after a safety infraction involving his forklift, Faulk was required to take a drug test, which he failed for marijuana. Faulk was suspended but was offered a "Last Chance Agreement," or a Continued Employment Agreement.[3] This agreement required Faulk to undergo additional drug testing, complete a drug treatment program, and comply with all company policies. One company safety policy required hearing protection to be worn in all manufacturing areas, outdoor working and loading areas, and any other marked areas; this policy specifically stated "[t]he use of Bluetooth devices/ear buds in lieu of hearing protection is not authorized."[4]  In July, Faulk was seen wearing AirPods while operating his forklift in violation of company policy. He was terminated on July 18, 2022.

---

[2] Doc. 1 at 3.

[3] Doc. 63 App. 83–84.

[4] Doc. 63 App. 89–90.  Faulk signed, acknowledging he received this policy in March 2022.  Doc. 63 App. 87.

Faulk alleges that Owens Corning—specifically, Brown—created an environment where black employees were treated unfairly. In a text conversation with an unidentified individual that was produced in discovery, Brown informed the individual Faulk was terminated and the unidentified individual responded: ""[5] Brown responded "                                    "[6]

This motion has had layers of briefing and legal argument. Owens Corning filed its motion for summary judgment. After two extensions of time, Faulk responded, then attempted to amend his response late.[7] Owens Corning filed multiple objections to Faulk's summary judgment evidence. Faulk presented declarations from undisclosed individuals, so the Court ordered additional depositions to occur before ruling on the motion. After the depositions and supplemental briefing, the Court held a hearing on this motion on January 15, 2025, for legal argument only. Finally, now, the Court considers Owens Corning's motion.

## II.    Sealing

### A. Legal Standard

The Court takes very seriously its duty to protect the public's access to judicial records. Transparency in judicial proceedings is a fundamental element of the rule of law[8]—so fundamental that sealing and unsealing orders are immediately

---

[5] Doc. 74-2, Ex. P.

[6] Doc. 74-2, Ex. P.

[7] The Court denied the late filing, but accepted Faulk's original response as a brief.

[8] *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021).

appealable under the collateral-order doctrine.[9]  The public's right to access judicial records is independent from—and sometimes even adverse to—the parties' interest.[10]  That's why the judge must serve as the representative of the people and, indeed, the First Amendment, in scrutinizing requests to seal.

Litigants may very well have a legitimate interest in confidential discovery secured by a protective order under Federal Rule of Civil Procedure 26(c).  However, "[t]hat a document qualifies for a protective order under Rule 26(c) for discovery says nothing about whether it should be sealed once it is placed in the *judicial record*."[11]

"To decide whether something should be sealed, the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure."[12]  If the Court seals information, it must give sufficient reasons to allow for appellate review.[13]   Finally, "[p]ublicly available information cannot be sealed."[14]

## B. Analysis

Faulk seeks to file two exhibits under seal on the judicial record: Faulk's full deposition transcript and a series of text messages exchanged in discovery, some of

---

[9] *June Med. Servs. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022).

[10] *See id.*

[11] *Id.* at 521 (emphasis in original).

[12] *Id.* (cleaned up).

[13] *Binh Hoa Le*, 990 F.3d at 419.

[14] *June Med. Servs.*, 22 F.4th at 520 ("We require information that would normally be private to become public by entering the judicial record.  How perverse it would be to say that what was once public must become private—simply because it was placed in the courts that belong to the public.  We will abide no such absurdity." (cleaned up)).

which are marked "Confidential" by the Defendant.  The Court **DENIES WITHOUT PREJUDICE** the motion, as the motion is facially insufficient under Fifth Circuit caselaw that governs the sealing of judicial records.  The Court will allow Faulk to file an amended motion to seal within fourteen days of this Order.  If no further motion is filed, the Court will unseal the exhibits.

Faulk's two-page brief does not include a line by line, page-by-page analysis of what material should be sealed or redacted.  Private or confidential information, such as social security numbers, addresses, or medical information, may be suited for redactions, but the Court will not seal a 244-page transcript because it might contain some unidentified private information.  According to Owens Corning's response, Faulk did not designate any of the transcript confidential under the parties' confidentiality agreement.  In the next fourteen (14) days, the moving party must: (1) identify precisely what information (pages, lines, etc.) the party wants sealed;[15] (2) conduct a line-by-line, page-by-page analysis[16] explaining and briefing why the risks of disclosure outweigh the public's right of access; and (3) explain why no other viable alternative to sealing exists.[17]  If the movant sealed the information based on

---

[15] *Id.* at 521.

[16] *Trans Tool, LLC v. All State Gear Inc.*, No. SA-19-CV-1304-JKP, 2022 WL 608945, at *6 (W.D. Tex. Mar. 1, 2022) ("[I]t is certainly within a court's discretion to summarily deny a request to seal when it is apparent that the submitter has not conducted its own document-by-document, line-by-line review.").

[17] *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kaufman*, No. 17-50534, Doc. 00514098372, at 2 (5th Cir. Aug. 1, 2017) ("This court disfavors the sealing of briefs or portions of the record where the parties on appeal have not articulated a legal basis for the sealing.").  The Fifth Circuit has "repeatedly required parties to justify keeping materials under seal." *Id.*; *see, e.g., Claimant ID 100236236 v. BP Expl. & Prod'n, Inc.*, No. 16-30521 (5th Cir. Jan. 31, 2017) (requesting letter briefs *sua sponte* as to whether appeal should remain under seal and entering order unsealing appeal); *United States v. Quintanilla*, No. 16-50677 (5th Cir. Nov. 16, 2016) (order

the non-movant's designation under the parties' confidentiality agreement, the non-movant should file a response conducting the same line-by-line, page-by-page analysis and include why no other viable alternative to sealing exists.

### III.    Summary Judgment

### A. Legal Standard

District courts can grant summary judgment only if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18]   A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[19]   Employment discrimination claims are subject to the *McDonnell Douglas* burden-shifting framework, which the Court addresses claim-by-claim below.[20]   Under *McDonnell Douglas*, the plaintiff must make a prima facie showing of discrimination.[21]   If the plaintiff successfully asserts a prima facie discrimination case, that raises a presumption of discrimination, which the employer may rebut by "articulat[ing] some legitimate, nondiscriminatory reason" for their actions.[22]   If the employer produces evidence that the perceived discriminatory treatment was justified by a "legitimate,

---

authorizing briefs and record excerpts to be filed under seal on condition that the parties filed redacted briefs and record excerpts on the public docket).

[18] Fed. R. Civ. P. 56(a).

[19] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

[20] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[21] *Id.* at 802.

[22] *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (cleaned up).

nondiscriminatory reason," the burden then "shifts back to the plaintiff, who must show the articulated reason is pretextual."[23]

### B. Summary Judgment Evidence

"Judges are not like pigs, hunting for truffles buried in the record."[24]  After multiple rounds of briefing and a summary judgment hearing, Faulk seems to think the Court is better than he is at finding truffles.  Faulk has filed multiple briefs, sought leave to amend his brief filed past the deadline, and filed documents via the court's emergency email, rather than ECF, where there was no emergency.

Local Civil Rule 56.6(a) requires parties to include materials they rely upon to support or oppose a motion for summary judgment in an appendix to the Court.  This appendix "must be assembled as a self-contained document, separate from the motion and brief or response and brief," and "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner."[25]  The Rule specifically states that the numbering should be sequential for the entire appendix, "i.e., the numbering system must not re-start with each succeeding document in the appendix."[26]

Faulk's evidentiary appendix (Doc. 73) totaled 1,042 pages and included no sequential page numbers or any bates stamps or page numbers of any kind, aside from those found on the deposition transcripts.  Due to the volume of the record, the Court held a hearing on the motion.  The Court could strike this appendix, but due to

---

[23] *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015).

[24] *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (per curium).

[25] Loc. Civ. R. 56.6(b)(1), (3).

[26] Loc. Civ. R. 56.6(b)(3).

the extent of briefing and discovery that has been ordered for the resolution of this motion, the Court chooses to not strike Faulk's appendix even though doing so requires the Court to sniff out the truffles for itself.

## C. Analysis

### 1. Discrimination Claim

Title VII prohibits discriminatory employment practices "because of such individual's race, color, religion, sex, or national origin."[27]  For cases brought under Title VII, the *McDonnell Douglas* burden-shifting framework applies at the summary judgment stage.  To establish a prima facie case for a discrimination claim, the plaintiff "must show that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[28]  Neither party disputes that Faulk is a member of a protected class, so the Court takes the other elements in turn.  Since Faulk asserts two adverse employment actions, the Court first considers the first two elements of the prima facie case, then addresses the third and fourth elements separately.

The parties dispute whether Faulk was qualified for his position.  Owens Corning argues that (1) Faulk cannot identify a promotion he pursued and was denied, and (2) due to his alleged marijuana use, he was not qualified as a forklift

---

[27] 42 U.S.C. § 2000e-2(a)(1).

[28] *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (cleaned up).

driver. Faulk appears to argue he was a good employee to satisfy this element. Even if the Court assumes this element met, Faulk fails to present a prima facie case for either adverse action (termination or loss of overtime), as addressed below.

### i.    Termination

One adverse employment action is undisputed: Faulk was terminated in July 2022.[29] The parties dispute, unsurprisingly, the cause of the termination.

So we turn to the fourth element, that similarly situated employees were not terminated and thus treated more favorably than Faulk. A plaintiff can establish the fourth element by proving he "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group."[30]

Owens Corning argues that Faulk cannot meet this element as (1) he was replaced by a member of the same protected class; (2) there are no similarly situated individuals who have the same disciplinary record as Faulk; and (3) there is no racial motivation to Faulk's termination or Owens Corning's other employment actions. Because Faulk was replaced by a someone within the same protected class,[31] he must identify a similarly situated comparator. Faulk argues that he has identified a number of similarly situated individuals, naming two employees: Zach Probst and Ivan Villegas. In the hearing, counsel stated identifying comparators by name was

---

[29] Doc. 62 at 15; Doc. 71 at 23.

[30] *Ernst*, 1 F.4th at 339.

[31] "Faulk's position was filled with an employee already working at [Owens Corning] in a different role, Kamron Robbins-Lopez. Mr. Robbins-Lopez is African-American." Doc. 63 at App. 48.

difficult due to the time that has passed, but specifically named Probst, arguing he "committed many of these various infraction things for which Mr. Faulk [was] terminated but [Probst] was never terminated."[32]

Similarly situated employees' "circumstances, including their misconduct, must [be] nearly identical."[33]  Employees are deemed similarly situated when they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[34]  Employees are *not* similarly situated where "the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer."[35]

Faulk argues that Zach Probst and Ivan Villegas are similarly situated to him and are not members of the same protected class.  While Faulk dwells on the allegation that Probst and Villegas wore headphones without repercussion,[36] Faulk fails to provide evidence of similar job title, job responsibilities, supervisor, or employment status for either.  Faulk's brief assures the Court, "Position, title, hours, and other such information would be easily introduced at trial given the consistent

---

[32] Doc. 100 at 32:20–33:4.

[33] *Perez v. Texas Dept. of Crim. Just.*, 395 F.3d 206, 213 (5th Cir. 2004) (cleaned up).

[34] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

[35] *Id.* (emphasis in original).

[36] Even though Faulk seeks to make much out of Villegas and Probst's misconduct, Faulk could not identify another employee with a similar disciplinary history who was not terminated.  Doc. 63 at App. 27, 153:2–25 ("Q. Do you know of any other coworker that has that disciplinary history who was not terminated? [objection] A. No.").  Since Faulk was terminated for wearing headphones only after being placed on a Continued Employment Agreement, disciplinary history is relevant.

10

and shared work schedules."[37]  But Faulk must prove his prima facie case now to get
to trial.  The Court dug through the record for the necessary evidence and finds it
lacking.  As to Villegas, the evidence only states he was a "coordinator."[38]  As to
Probst, Faulk's counsel requested at the hearing that the Court infer that Probst was
a forklift operator.[39]  The record presents little to no evidence on the job title, duties,
supervisor, or job status of Probst, Villegas, or any other potential comparators.
Therefore, the Court cannot compare these individuals to Faulk, and Faulk fails to
carry his prima facie burden of showing he was treated less favorably than other
similarly situated employees.

Faulk also seeks to prove the fourth element by arguing he was terminated
because of his race and argues that the Court should find an "inference of racial
discrimination."[40]  Faulk argues for a broader understanding of the fourth element
and that the Court should "leave open the consideration of other evidence besides
comparators in determining if there was an inference of discrimination."[41]  He points

---

[37] Doc. 94 at 5.

[38] Doc. 73-3 ¶ 21.

[39] Doc. 100 at 33:19–25.  Faulk points to an instance of accusing Mike Brown of treating a black
employee caught sleeping different from how Brown would treat Zach Probst, a white employee, in the
same situation.  Doc. 73-11 ¶¶ 3–4.  While this is a comparison between two individuals, this account
does not present a similarly situated individual to Faulk.  Further, in this instance, Faulk was
speculating as to Brown's hypothetical treatment of Probst, so it is irrelevant to this analysis.

[40] Doc. 100 at 31:12–17.

[41] Doc. 94 at 8.  Faulk relies on lengthy declarations for the proposition that Mike Brown and
Owens Corning treated black employees unfairly.  These declarations do not identify a comparator.
And where they do identify instances of alleged disparate treatment, they fail to articulate personal
knowledge or to provide information as to job duties sufficient for the Court to consider whether the
individual is similarly situated to Faulk.

11

to Supreme Court and Fifth Circuit precedent for this argument.[42]  But his reliance on this case law is misplaced.

In *Texas Department of Community Affairs v. Burdine*, the Supreme Court clarified that the purpose of the prima facie case, as a whole, is to give rise to an inference of unlawful discrimination, creating a rebuttable presumption that the employer unlawfully discriminated.[43]  This language is neither descriptive of the fourth element, nor instructive as to Faulk's burden here.

Faulk cites to *Nguyen v. University of Texas School of Law* for the proposition that a "broader formulation of the fourth element" should be considered.[44]  In *Nguyen*, the court articulated that the plaintiff's burden under the fourth element was to show "she was either replaced by someone outside her protected class, was treated less favorably than other similarly situated employees who were not members of her protected class, or was otherwise discharged because of her race."[45]  *Nguyen* is designated as an unpublished opinion that is not binding on this Court as precedent under Fifth Circuit Rule 47.5, but it is persuasive.[46]  In that case, the plaintiff failed to meet the fourth element under either test.  The plaintiff presented three events as racial animus that predated the adverse event by over a year: an email forwarding

---

[42] Doc. 94 at 7 (citing *Tex. Dep't of Cmty. Affs. V. Burdine*, 450 U.S. 248, 253 (1981); *Nguyen v. Univ. of Tex. Sch. of L.*, 542 F. App'x. 320, 323 (5th Cir. 2013) (per curium)).

[43] *Burdine*, 450 U.S. at 253–54 ("[T]he prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." (cleaned up)).

[44] Doc. 94 at 7.

[45] *Nguyen*, 542 F. App'x at 323.

[46] *See id.* at 321.

her resume and flagging the use of "shedragon" in plaintiff's email address; a reference to "pan-Asian descent"; and plaintiff's job description that included a reference to "American/Texas business culture."[47]  The Court found that the plaintiff did not articulate how the first two statements were proof of racial animus,[48] and that the use of "American/Texas business culture" did not require conformance with a racial stereotype, and the employer provided this standard for all employees.[49]  The Court noted that, even if the Court assumed a "racial undertone" to the statements, "all three statements . . . are too remote in time and too attenuated from [the employment decisions and adverse action] to be probative of the question whether racial animus influenced these adverse employment actions."[50]  Further, "[t]hey are also stray remarks similar to those that we have previously held to be too vague and too indirect to demonstrate racial animus."[51]

Faulk seeks to expand the fourth element by relying on *Nguyen* for racial animus.  Though the Court is not bound by this standard, Faulk would fail to meet the fourth element as Faulk fails to prove the evidence demonstrates racial animus or the evidence is too remote in time or too attenuated.  First, Faulk disavowed any complaint of discrimination at the time;[52] second, the picture with the Confederate

---

[47] *Id.* at 323–24.

[48] *Id.*

[49] *Id.* at 324.

[50] *Id.* at 325

[51] *Id.*

[52] Doc. 73-15, Ex. N (audio recording) at 3:29-:54 ("I didn't say anything about discrimination, I never said a word.").

flag in the background on Brown's Facebook page was posted three years prior to Faulk's termination;[53] and third, the text message "███████████" was sent to Brown by an unidentified individual after Faulk's termination, and Brown disavowed the message by responding, "████████████"[54]

The Court is aware that the *McDonnell Douglas* burden-shifting framework is not intended to be rigid. And it certainly isn't, as the prima facie elements articulated in *McDonnell Douglas*,[55] a discriminatory failure to hire case, have been applied in other Title VII discrimination cases for other adverse actions—like this one. The standard for the fourth element of the prima facie case is well established, and Faulk has failed to produce any evidence of a similarly situated comparator, through job duties or responsibilities, for the Court's consideration.

### ii. Loss of Overtime Opportunity

The parties dispute the other adverse employment action—loss of overtime. Based on the record, Faulk's eligibility for utility operator, one of three roles, was turned off in Owens Corning's overtime portal for two or three weeks in February 2022.[56] Faulk argues that Brown turned off his overtime intentionally because of his race. Owens Corning argues that Faulk did not miss out on any overtime compensation and that, further, the evidence supports that Faulk actually believed Brown was jealous of his new tires, not that he acted from racial animus.

---

[53] Doc. 73-14, Ex. M.

[54] Doc. 74-2, Ex. P.

[55] *McDonnell Douglas*, 411 U.S. at 802.

[56] Doc. 74-1 at 154:24–155:5; 156:10–157:3.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."[57]  Adverse employment actions are not limited to ultimate employment decisions, such as termination.[58]

Here, the reduction in overtime roles was not because of or related to Faulk's race—per Faulk's own admission.  When asked in his deposition if he knew why Mr. Brown turned off his utility operator overtime, Faulk replied:



Even if Faulk could adequately demonstrate an adverse employment action for overtime because of his race, he fails to identify a comparator who was similarly situated but was treated more favorably—that is, who kept his or her overtime eligibility.  At oral argument, counsel argued that the appropriate comparators for the loss of overtime would be all remaining white forklift operators, and specifically one operator identified as Sean.[60]  But Faulk's declaration states that Sean, a white

---

[57] 42 U.S.C. § 2000e-2(a)(1).

[58] *Hamilton v. Dallas Cnty*, 79 F.4th 494, 502–03 (5th Cir. 2023).

[59] Doc. 74-1 at 158:10–20; *see also* Doc. 73-11 ¶ 36.

[60] Doc. 100 at 30:9–17; 48:7–17.

male, was a forklift driver who did not work as a utility operator.[61]  Sean told Faulk he had received three or four overtime notification texts.[62]  There is no further testimony as to what types of overtime texts Sean received, or if Sean took these overtime shifts when Faulk could not.  Therefore, the Court finds that Faulk fails to establish the fourth element for his prima facie case for loss of overtime eligibility.

## 2.    Retaliation Claim

To establish a prima facie case of retaliation, a plaintiff must show (1) he "engaged in protected activity"; (2) he "suffered an adverse employment action"; and (3) "a causal link exists between the protected activity and the adverse employment action."[63]  Owens Corning argues that Faulk did not establish that he engaged in protected activity under Title VII prior to his termination.  Faulk argues that he was "fired for a completely made up reason,"[64] and states, in a conclusory fashion, that he has established a prima facie case.[65]  The Court agrees with Owens Corning and finds that Faulk has failed to establish a prima facie retaliation claim.

The first prong of the prima facie cases requires a plaintiff to demonstrate that he engaged in protected activity under Title VII.  "The Title VII antiretaliation provision has two clauses, making it an unlawful employment practice for an

---

[61] Doc. 73-11 ¶ 32.  The Court accepts this declaration, despite its failure to comply with Local Civil Rule 11.1 on signatures.  Even accepting Faulk's declaration as proper evidence, Faulk fails to show a prima facie case for either claim.

[62] Doc 73-11 ¶ 32.

[63] *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).

[64] This argument goes to the employer's legitimate nondiscriminatory reason.  Faulk must first prove a prima facie case before the burden shifts to Owens Corning to prove such a reason.

[65] Doc. 71 at 25–26.

16

employer to discriminate against any of his employees (1) because he has opposed any practice made an unlawful employment practice [by Title VII], or (2) because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].[66]  The first is referred to as the "opposition clause," and the second as the "participation clause."[67]

At the hearing, Faulk's counsel argued, "[Faulk]  was retaliated against for complaining regarding the breaks, regarding the failure to train black employees, and complaining about the overtime."[68]  "When one employee communicates to [his] employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity."[69]  The Supreme Court has recognized that an employee can oppose discriminatory conduct even where the employee does not initiate a formal complaint.[70]

So the question here is whether Faulk's complaints rose to the level of a protected activity.  As to the first bucket—speaking up about unequal breaks—Faulk expressly disavowed it was a complaint about discrimination at the time.[71]  Further,

---

[66] *Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2008) (citing 42 U.S.C. § 2000e-3(a)) (cleaned up).

[67] *Id.*

[68] Doc. 100 at 29:4–8.

[69] *Crawford*, 555 U.S. at 276 (cleaned up) (emphasis in original) (citing EEOC compliance manuals).

[70] *Id.* at 277.

[71] Doc. 73-15, Ex. N (audio recording) at 3:29-:54 ("I didn't say anything about discrimination, I never said a word. . . . You're just making up stuff now.).

at least one of the individuals who took the long breaks that Faulk complained belonged to the same protected class as Faulk.[72]

As to speaking up about a failure to train black employees, the Court finds no record evidence that Faulk was not trained, nor that he complained about this.[73] Faulk states in his declaration that he would train people on the forklift.[74]

As to overtime, Faulk never alleged or reported discrimination, but testified that Brown turned off his overtime not because of race but because of jealousy over Faulk's sweet ride.[75] "Harassment motivated by something other than a plaintiff's membership in a protected class lies beyond the scope of Title VII."[76] As to all three buckets, the Court sees no record evidence that Faulk's complaints or "speaking up" ever alleged or hinted at unlawful discrimination. An employer cannot retaliate where there was no protected activity.[77]

---

[72] Doc. 73-1 at 152:17-154:3 (discussing Faulk reporting Gil Norman, a black employee, for a long break).

[73] Faulk includes a third-party declaration from Quinterious Williams. Williams alleges that many of the Hispanic workers did not speak English and "they would never show Black employees how to do anything." Ex. 73-3 ¶ 18. This does not demonstrate a race-based discrimination as to Faulk—it does not appear to involve Faulk at all. The only instance in which the Court sees evidence of a complaint, it turns out that Faulk "forgot he had been trained," when he made the verbal complaint. Doc. 73-1 at 336:9–17.

[74] Doc. 73-11 ¶ 16.

[75] Doc. 74-1 at 158:10–20; *see also* Doc. 73-11 ¶ 36 ("Mike Brown did not like that I had a nice truck, because everyone talked about how nice my truck was, and not more than a week after that, Mike Brown turned off my overtime."). Owens Corning's corporate representative, Rebecca Pike, testified that Faulk had not reported or alleged discrimination as to the overtime issue. Doc. 73-1 at 151:4-5.

[76] *Stingley v. Watson Quality Ford, Jackson, Miss.*, 836 F. Appx. 286, 289 (5th Cir. 2020) (per curium) (unpublished).

[77] *Id.* at 290.

18

To the extent Faulk argues he engaged in protected activity by calling the EEOC, Faulk fails to carry his burden here as to the causal link.  Faulk states in his response that he filed an EEOC charge in October 2022.[78]  Faulk states in his declaration that he "ended up calling the EEOC," around June or July 2022, prior to his termination.[79]  As Faulk's counsel argued at the hearing, the only alleged adverse employment action for Faulk's retaliation claim is his termination.  Thus, to prove a prima facie case, Faulk must demonstrate that there is a causal link between his protected activity—contacting EEOC—and his termination.  But Faulk testified in his deposition that he did not tell anyone at Owens Corning about calling the EEOC.[80]

"A causal link is established when the evidence demonstrates that the employer's decision to terminate was in part on knowledge of the employee's protected activity."[81]  An employer cannot retaliate against an employee for protected conduct where the employer is unaware of that conduct.[82]  Faulk does not demonstrate that Owens Corning was aware that he contacted the EEOC or any other protected activity.  In fact, Owens Corning's corporate representative denies having any knowledge Faulk contacted the EEOC before he was terminated and denies that

---

[78] Doc. 71 at 23.  Faulk could not have been retaliated for something that happened after the date of the alleged retaliation—his termination.

[79] Doc. 73–11 ¶ 69; *accord* Doc. 74-1 at 190:16–20.

[80] Doc. 74-1 at 192–94.

[81] *Ackel v. Nat'l Comms., Inc.*, 339 F.3d 376, 386 (5th Cir. 2003) (cleaned up).

[82] *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999).

Owens Corning knew either.[83]  Therefore, Faulk fails to establish a prima facie case of retaliation based on contacting the EEOC.

Faulk further alleges he complained about Brown's Facebook post that included a photo of a Confederate flag in the background.[84]  Even if the Court assumes this is a protected activity, Faulk fails to establish a causal link between the complaint and his termination.  Faulk states he complained about the Facebook post to Rebecca Pike at Owens Corning sometime in March 2022.[85]  This was one month after his overtime was deactivated and reactivated and four months prior to his termination.  The Court finds this timing is too remote to find a causal link between the complaint and the adverse action.

### 3.    Hostile Work Environment Claim

Faulk did not plead a Title VII violation based on a hostile work environment, but the Court will consider whether his allegations could give rise to an implicit hostile work environment claim.

> To establish a claim of hostile work environment under Title VII, a plaintiff must prove he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[86]

---

[83] Doc. 73-1 at 331:2–8.

[84] Doc. 73-11 ¶ 35, 49.

[85] Doc. 74-1 at 173:14–174:8.

[86] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

The first element is undisputed.  But even if the Court assumes Faulk was subject to unwelcome harassment—which it does not—Faulk himself denied that he was complaining of discrimination in an audio recording of a conversation between Faulk and Brown about breaks, dated July 9, 2022.[87]  In Faulk's own words, "I didn't say anything about discrimination, I never said a word."[88]  Therefore, the Court does not find that Faulk pled a hostile work environment claim either expressly or impliedly.

Because Faulk has failed to establish a prima facie case of racial discrimination for any of his claims, the Court need not consider the subsequent steps of the *McDonnell Douglas* analysis.[89]

## IV. Conclusion

In short, Faulk has a great many complaints about Owens Corning.  But none of his complaints raises a dispute that would go to a jury.  This Court is reminded of wisdom that has been stated many times by several different courts.  "A federal court

---

[87] *See* Doc. 75; Doc. 86 at 3.  The recording, Faulk's Exhibit N, was provided by email to the Court.  Faulk states Owens Corning produced the recording in discovery, and Rebecca Pike, an Owens Corning employee, verified the recording in her deposition.  The Court found a better description of the recording in Mike Brown's deposition.  Doc. 73-4 at 31:9–32:9.

[88] Doc. 73-15, Ex. N at 3:29-:54.

[89] Even if this case reached the pretext stage of the *McDonnell Douglas* framework, Faulk's best evidence would still fail the Fifth Circuit standard for pretext.  A plaintiff must present "substantial evidence" of pretext for discrimination; "evidence must be of sufficient nature, extent, and quality to permit a jury to reasonably infer discrimination." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (cleaned up).  Faulk's best argument for pretext is the picture with a Confederate flag in the background posted on Brown's Facebook page three years prior to Faulk's termination.  Doc. 73-14, Ex. M.  This is not sufficiently close in time to infer causation.  And the text message stating "▓▓▓▓▓▓▓▓▓" was sent to Brown by an unidentified individual, and Brown disavowed the message by responding, "▓▓▓▓▓▓▓▓▓▓▓▓ Doc. 74-2, Ex. P.

is not the Justice League.  It cannot swoop in and address wrongs, real or perceived, wherever they appear."[90]

For the foregoing reasons, the Court **GRANTS** Owens Corning's Motion for Summary Judgment and **DISMISSES WITH PREJUDICE** Faulk's claims.  A separate final judgment will be entered.  As to Faulk's sealing motion, the Court **DENIES WITHOUT PREJUDICE** Faulk's motion but will allow him to file an amended motion to seal within fourteen (14) days of this Order.[91]

**IT IS SO ORDERED** this 18th day of February, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[90] *Combs-Harris v. Carvana, LLC*, 2023 WL 2772125 (E.D. Pa. April 4, 2023) (citing *Brummell v. Clemons-Abdullah*, No. 4:21-cv-01474-SRC, 2022 WL 1091137, at *3 (E.D. Mo. April 12, 2022)); *Long v. Clemons-Abdullah*, No. 4:21-CV-01395-SRC, 2022 WL 950862, at *3 (E.D. Mo. Mar. 30, 2022); *Wright v. United States*, 2:21-cv-01152-NR, at *4 (W.D. Pa. Jan. 6, 2022); *Lindsay v. State of Colorado*, No. 8:21-cv-00468, at *6 (D. Neb. Dec. 16, 2021); *Martin v. Coca Cola Consol., Inc.*, No. 1:20-cv-323-HAB, 2020 WL 5548690, at * 2 (N.D. Ind. Sept. 16, 2020)).

[91] Matters such as sealing and sanctions can endure past a final judgment.  So the forthcoming final judgment will not dispose of the sealing issue at this point.